UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JUIDITH F. COOLEY,<br>    Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br>    Defendant. | )<br>)<br>)    1:05-CV-212<br>)<br>)    *(Edgar/Carter)*<br>)<br>)<br>)<br>) |

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of plaintiff's Motion for Judgment on the Pleadings (Doc. No. 16) and defendant's Motion for Summary Judgment (Doc. No. 18).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was fifty-six years old at the date of the ALJ's decision with a high school equivalency education and past work experience as a staff worker, forklift driver, carpet mill worker, utility worker, packer, and retail clerk (Tr. 21-22, 63-65). She alleged disability

1

commencing January 30, 2002 (Tr. 22, 55-57, 64).

## Application For Benefits-Administrative Proceedings

This is an action for judicial review of Defendant's final decision that Plaintiff was not entitled to a period of disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 416(d), 423. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff filed her DIB application in January 2003, alleging disability since January 30, 2002, due to fibromyalgia, degenerative disc disease, and osteoarthritis (Tr. 55-57, 64). Plaintiff's claim was denied initially and upon reconsideration (Tr. 30-33). A hearing was held on October 23, 2003, in Chattanooga, Tennessee before Administrative Law Judge John F. Proctor (the "ALJ") (Tr. 354-72). On November 13, 2003, the ALJ issued an unfavorable decision, and plaintiff timely requested the Appeals Council to review the ALJ's decision (Tr. 14, 21). The Appeals Council's denial of review left the ALJ's decision as the Commissioner's final decision (Tr. 5). Plaintiff now seeks review under 42 U.S.C. § 405(g).

## Standard of Review

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were supported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to

2

support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

How Disability Benefits Are Determined

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that disability claims are evaluated by way of a five-step sequential analysis. 20 C.F.R. § 404.1520. The five-step analysis is sequential because if, at any step, the claimant is found to be not disabled or to be disabled, then

the claim is reviewed no further. 20 C.F.R. § 404.1520(a). The following are the five steps in the analysis:

> Step 1: Is claimant engaged in substantial gainful activity? If so, claimant is not disabled. 20 C.F.R. § 404.1520(b).
>
> Step 2: Does claimant have a "severe" impairment or combination of impairments that significantly limits claimant's ability to do basic work activities, and will foreseeably result in death or last at least twelve months? If not, claimant is not disabled. 20 C.F.R. §§ 404.1509, 404.1520(c), 404.1521.
>
> Step 3: Does the claimant's impairment meet or equal the criteria of an impairment described in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1? If so, the claimant is disabled, and the analysis may end without inquiry into the vocational factors. 20 C.F.R. § 404.1520(d). If inquiry is made into vocational factors, after step three but before step four, the Commissioner evaluates a claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e)-(f); 404.1545.
>
> Step 4: Does claimant's RFC permit claimant to perform claimant's past relevant work? If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f).
>
> Step 5: Does the claimant retain the RFC to perform other work in the economy? If so, the claimant is not disabled. 20 C.F.R. § 404.1520(g).

The burden of proof is upon the claimant at steps one through four to show disability. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999). Once the claimant has demonstrated the extent of claimant's RFC at step four, the burden shifts to the Commissioner to show that there is work in the national economy that may accommodate claimant's RFC. *Id.*

4

## ALJ's Findings

The ALJ concluded at step four of the sequential analysis that Plaintiff was not disabled because she could perform her past relevant jobs as a staff worker and packer (Tr. 25, 26). The ALJ made the following findings in support of the decision, which are conclusive if they are supported by substantial evidence in the record:

1. The claimant meets the nondisability requirements set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

5. The claimant's allegations regarding her degree of symptomatology and limitation are not totally credible for the reasons set forth in the body of the decision.

6. I have carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

7. The claimant has the residual functional capacity: sedentary work activity.

8. The claimant's past relevant work as a staff worker and packer did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

9. The claimant's medically determinable "severe" impairments do not prevent her from performing her past relevant work.

10. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(e)).

(Tr. 26,27).

## Issues Presented

Plaintiff raises one issue.

1. Whether the ALJ erred by failing to properly consider all the functional limitations provided in the opinion of the plaintiff's treating rheumatologist and, thus, failed to comply with the requirements of Social Security Rulings 96-2p and 96-9p.

## Plaintiff's Testimony

Plaintiff alleged that she stopped working in January 2002, after having pain all over her body for "some years;" after she saw her rheumatologist, Plaintiff claimed he "immediately put me on leave" (Tr. 359). She testified that her physicians "just never would let me go back" to work (Tr. 359-60).

Plaintiff alleged she had pain everyday (Tr. 361). She attested she could walk for "a half a block" (Tr. 362). Plaintiff testified she took naps frequently (Tr. 363). She took medication which made her "sleepy" and caused swelling in her legs and feet, but improved the pain in her fingers and hands (Tr. 363-64). Plaintiff also alleged difficulty with concentration, paying attention and understanding things she read (Tr. 364-65). She testified that she "probably couldn't lift on a regular basis at all" (Tr. 367). Her friend did most of the cooking and housework (Tr. 367). Plaintiff testified in the October 23, 2003, hearing that she weighed 225 pounds, and alleged that this was not her normal weight; she claimed that she gained 25 pounds since January 2003 (Tr. 368).[1]

## Relevant Medical Evidence

---

[1] However, a medical note from September 2001, documents that Plaintiff weighed 223 pounds and Plaintiff was instructed to reduce her weight down to a target weight of 125-135 pounds (Tr. 293-94). In June 1999, Plaintiff weighed 206 pounds (Tr. 224). In August 2002, Plaintiff weighed 225 pounds (Tr. 189). Thus, the record does not support Plaintiff's claim of a 25 pound weight gain since January 2003.

6

Plaintiff alleged disability beginning in January 2002, and claimed that her rheumatologist put her on leave at that time and "just never would let me go back" to work (Tr. 359). However, the medical evidence fails to document that any rheumatologist, either Dr. Mahfood or Dr. Seinknect ever refused to allow Plaintiff to return to work. In fact, Dr. Sienknect never saw Plaintiff until February 13, 2003 (Tr. 331).

The evidence reflects that in June 1999, a spinal MRI revealed degenerative changes but no stenosis or herniation (Tr. 220-22). In 2000, Plaintiff underwent successful shoulder rotator cuff repair (Tr. 132-62, 214-17). On January 30, 2002, Plaintiff presented to Dr. Mahfood reporting pain in all her joints (Tr. 205). Plaintiff reported a 30 pound weight gain over the past few months, but she weighed 224, the same as she did in September 2001 (Tr. 203, 205, 293-94). Dr. Mahfood observed that Plaintiff sat in no distress, and her physical examination was essentially normal with trigger points consistent with fibromyalgia, but normal gait and good spinal range of motion (Tr. 201-03). He recommended a medical leave of absence and gave Plaintiff medication and ordered multiple tests (Tr. 202). Plaintiff returned for follow up in March 2002, seeking a return to work authorization (Tr. 195). Dr. Mahfood issued Plaintiff a "back to work note" effective March 21, 2002 (Tr. 194). In April 2002, Dr. Mahfood observed that Plaintiff had a normal examination with no back spasms, no trigger points, good overall strength and no neurological deficits (Tr. 192). He recommended Plaintiff modify her water aerobics, and do stretching exercises rather than yoga (Tr. 192).

In June 2002, Plaintiff complained to Dr. Mahfood of "hurting all over" and "went on to spontaneously tell me about being harassed on the job for the last three years" (Tr. 191). Plaintiff denied any side effects from medication other than sleepiness (Tr. 191). She had good

7

strength and range of motion (Tr. 190). In August 2002, Dr. Mahfood "could not appreciate findings of active systemic rheumatic disease" (Tr. 188). In October 2002, Dr. Mahfood reported that Plaintiff's "physical findings were difficult to correlate with her subjective symptoms," and despite her claims of extreme pain, Dr. Mahfood "observed the patient sitting in no apparent distress" (Tr. 184). He gave Plaintiff a return to work slip with restrictive duties (Tr. 184). In November 2002, Dr. Mahfood recorded Plaintiff's report that her symptoms had "improved remarkably" with her medication, but Plaintiff felt she could not return to work "because I am taking pain medicines" (Tr. 182-83). In January 2003, Dr. Mahfood stated that "it is my considered opinion that the patient's condition is non-inflammatory at this presentation and that she needs to learn to relax." He recommended aquatic therapy, massage and ultrasound. He discussed Tai Chi and yoga exercises and biofeedback modalities to help reduce the tension (Tr. 327). Plaintiff "informed me that her workplace has given her a statement not to come back to work and I have asked her to bring that statement to me" (Tr. 327).

In April 2003, Dr. Knox-Carter, a state agency physician, reviewed the medical record and concluded that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, and sit, stand, and walk for six hours each in an eight hour workday (Tr. 258). Plaintiff had no postural limitations (Tr. 259).

Plaintiff was not seen by Dr. Sienknecht until February 13, 2003 (Tr. 331). He observed that Plaintiff had essentially normal examination except for pain with very little objective evidence of serious joint damage (Tr. 308). Dr. Sienknecht referred her to physical therapy and recommended a tai chi exercise program (Tr. 308). In May 2003, Plaintiff reported decreased back pain with therapy and medication. Dr. Sienknecht reported fibromyalgia with diffuse

8

tenderness, fatigue, poor sleep patterns, and irritable bowel syndrome (Tr. 302). A physical therapy note from May 2003, documented that Plaintiff was very compliant with and responded well to her program and had trunk range of motion within functional limits, and near normal strength (Tr. 263). Further therapy was recommended because, while Plaintiff had not reached all goals, she was "responding well to therapy with good progress, yet remains with minimal limitations" due to pain (Tr. 263).

In June 2003, Dr. Sienknecht completed a form indicating Plaintiff could walk for two hours in an eight hour day, stand for two hours, sit for six hours, and could not lift, bend, or stoop; he felt she was a candidate for sedentary work (Tr. 300, 331). He noted that range of motion testing was not done, but Plaintiff had "no serious limitation of peripheral joints" (Tr. 299). In August, he noted that Plaintiff had "excellent muscle strength" (Tr. 328).

### Vocational Expert Testimony

The vocational expert (VE) testified that Plaintiff's past relevant work as a packer and staffing coordinator were sedentary jobs (Tr. 369)

### Analysis

Plaintiff argues that the ALJ erred by failing to properly consider all the functional limitations provided in the opinion of the plaintiff's treating rheumatologist, Dr. Sienknecht. In a Restrictions Form completed June 26, 2003, Dr. Sienknecht opined that Plaintiff was limited to "sedentary work only[, with] *no lifting, stooping, [or] bending*." (Tr. 331) (emphasis added). In his decision, the ALJ affords "controlling weight to the specific limitations opined by . . . Dr. Sienknecht." (Tr. 25). The ALJ in citing the treating doctor's opinion, however, fails to include any limitations as to lifting, bending, or stooping (Tr. 25). Rather, the ALJ found that Plaintiff

9

was able to sit 6 hours and stand or walk 2 hours in an 8-hour day, abilities that are consistent with sedentary work (Tr. 25). Plaintiff argues that a simple comparison of the residual functional capacity ("RFC") found by the ALJ and that opined by Dr. Sienknecht reveals that Dr. Sienknecht's RFC is significantly more restrictive than the ALJ's finding that the plaintiff retains the RFC to perform a "full range of sedentary work." (Tr. 22).

In response, the Commissioner contends substantial evidence supports the ALJ's finding that Plaintiff was not disabled because she could perform her past relevant work as a packer and staffing coordinator. I agree in part with the Commissioner because the record reflects Plaintiff can perform her past relevant work as a staffing coordinator.

The Commissioner notes the ALJ found that Plaintiff retained the RFC to perform sedentary work[2] (Tr. 25). The ALJ considered the entire record, including the medical evidence, the physician opinion evidence, and Plaintiff's subjective complaints (Tr. 25). The ALJ specifically relied on the opinion of Plaintiff's treating physician, Dr. Sienknecht, who concluded that Plaintiff could perform sedentary work (Tr. 25, 300, 331). Though the record contained evidence that Plaintiff was not limited to this extent, *i.e.* the opinion of a state agency physician finding Plaintiff could perform medium work, the ALJ afforded little weight to that opinion because the physician did not examine or interview Plaintiff and did not have the benefit of the entire record (Tr. 25). The ALJ weighed the physician opinion evidence and reasonably relied on Dr. Sienknecht's opinion in assessing Plaintiff's RFC. 20 C.F.R. § 404.1527; Social

---

[2]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of standing and walking is often necessary. 20 C.F.R. § 404.1567(a).

Security Ruling (SSR) 96-2p.

Plaintiff argues only that the ALJ erred by failing to adopt all of the functional limitations suggested by Dr. Sienknecht.[3] Plaintiff's brief at 4. Plaintiff specifically asserts that the ALJ did not include any limitations from lifting, bending, or stooping. Plaintiff's brief at 4. The Commissioner concedes that Dr. Sienknecht opined that she could not lift, bend, or stoop, which is more restrictive than the ALJ's RFC assessment (Tr. 330, 331). However, as the Commissioner argues, though the ALJ did not expressly include these additional lifting, bending and stooping limitations in his RFC assessment, his failure to do so does not affect the outcome of this case and, therefore, does not warrant remand, because the job of staffing coordinator, as described by Plaintiff, required no lifting, stooping, kneeling, crouching or crawling (Tr. 79).

The ALJ found that Plaintiff retained the RFC to perform sedentary work. The ALJ then found that, given her RFC, Plaintiff could perform her past relevant work (PRW) as a staff work (coordinator) and packer (Tr. 25). As the ALJ noted, the VE testified that these jobs were sedentary jobs (Tr. 25, 369). Though the VE's testimony was limited to the full range of sedentary work, and did not include the additional lifting, bending, and stooping limitations suggested by Dr. Sienknecht, Plaintiff provided a description of her job responsibilities as a staffing coordinator. According to Plaintiff's own description of that job, it required no lifting, stooping, kneeling, crouching or crawling (Tr. 79). Thus, even assuming Plaintiff were unable to

---

[3]*Plaintiff asserts that she was treated by Dr. Sienknecht since 1996. Plaintiff's brief at 4. However, the restrictions form Dr. Sienknecht completed and Plaintiff cites makes clear that he saw Plaintiff for the first time on February 13, 2003 (Tr. 331). In fact, as Dr. Sienknecht noted, a different physician from his practice, Dr. Craig, briefly saw Plaintiff from April 15 through May 30, 1996 (Tr. 331). Plaintiff was not seen again by Dr. Craig and not seen by Dr. Sienknecht until February 2003.*

11

lift, bend, or stoop, as Dr. Sienknecht opined, I conclude she would still be able to perform her past relevant work as a staffing coordinator, as Plaintiff reported she performed that job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987) (in determining whether a claimant can perform his past relevant work, the Secretary may rely on the requirements of the job as the claimant performed it, or on the requirements of the job as it is generally performed in the national economy).

Plaintiff cites SSR 96-9p, and argues that limitations on lifting, bending, and stooping reduce her RFC to less than sedentary work. However, SSR 96-9p has no application in this case since, as the ALJ found, Plaintiff could perform her past relevant work. SSR 96-9p applies in cases where the claimant is unable to do her past relevant work and the ALJ must determine whether a claimant can do other work, a Step 5 determination. Here, the ALJ determined that Plaintiff was not disabled because she could perform her past relevant work, a Step 4 determination. Thus, SSR 96-9p does not apply to this case.

Plaintiff points out that she testified that her medications cause drowsiness and inability to focus or concentrate, and that if Plaintiff's testimony were credited, the VE testified that no jobs would exist that Plaintiff could perform. Plaintiff's brief at 3. She further notes that Dr. Jagger indicated that driving while Plaintiff was using medications for her pulmonary problem would constitute a DUI offense in Tennessee (Tr. 266). Plaintiff's brief at 3, n. 3. However, the medication he prescribed in May 2003 was for a chronic cough and unrelated to Plaintiff's purportedly disabling condition. Moreover, it was prescribed for a three month trial, 60 pills (twice each) with 3 refills (Tr. 266). Further, Plaintiff did not indicate that her past relevant work required driving. The ALJ considered Plaintiff's allegations of adverse side effects from

12

medications, and reasonably noted that the record "fails to show that these effects have been of the severity as to prevent her from performing the level of work opined by Dr. Sienknecht" (Tr. 25). As the ALJ observed, the record documents that Plaintiff's pain responded well to her medications (Tr. 25). In fact, Dr. Sienknecht reported that Plaintiff improved movement with physical therapy and enjoyed a "positive response to medications" (Tr. 25, 331). The ALJ also referred to Plaintiff's activities of daily living:

> I further note that the claimant performs various household tasks, shops, cooks, reads, watches television, does the laundry, visits with others, occasionally dines out, and enjoys crossword puzzles, a degree of activity which supports the degree of limitation opined by Dr. Sienknecht.

(Tr. 25).

I conclude there is substantial evidence to support the ALJ's finding that Plaintiff's allegations regarding medication side effects were not substantiated by the record.

## Conclusion

13

For the reasons stated herein, I RECOMMEND [4] that the Commissioner's decision be AFIRMED. It is further RECOMMENDED that the defendant's Motion for Summary Judgment (Doc. No. 18) be GRANTED, the plaintiff's Motion for Judgment on the Pleadings (Doc. No. 16) be DENIED, and this case be DISMISSED.

s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this Report and Recommendation must be served and filed within ten (10 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).